IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                                                                                                                  No. 17-CR-3563 MV

GABRIEL TRUJILLO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Reconsider his Motion to Suppress Evidence and Supporting Memorandum. [Doc. 32] The Court, having considered the Motion, relevant law, and being otherwise fully informed, finds that the motion is not well-taken and will be **DENIED.**

## BACKGROUND

Mr. Trujillo was charged in a two-count Indictment with Possession with Intent to Distribute 50 Grams and More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and Possession of a Firearm During the Commission of Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). [Doc. 11] On January 11, 2018, Mr. Trujillo filed a Motion to Suppress Evidence, seeking to exclude evidence seized by law enforcement authorities following a traffic stop and subsequent inventory search of his vehicle on December 6, 2017. [Doc. 15] On January 24, 2018, the United States filed a Response in opposition to Mr. Trujillo's Motion to Suppress. [Doc. 17]. On January 26, 2018, Mr. Trujillo filed a Reply to the United States' Response. [Doc. 19].

The Court held an evidentiary hearing on May 8, 2018, and took the Motion under advisement. [Doc. 25] Deputy Mitchell Skroch, Drug Enforcement Agent Jeffrey Mauldin, and Captain Andrea Taylor testified at the May hearing. [*See* Doc. 30 (Hearing Transcript ("Tr."))]

Deputy Skroch testified about the arrest and search of Mr. Trujillo. [*See generally* Tr. at 6–22] He read Mr. Trujillo the *Miranda* warning upon placing him under arrest. [Tr. at 16:21–17:2, 24:2–19] Deputy Skroch discussed his knowledge of Bernalillo County Sheriff's Department's policy on towing procedures and inventory searches, and how he applied it when determining whether to search Mr. Trujillo's locked green backpack. [Tr. at 19:5–13, 24:21–25:25] Finally, Deputy Skroch was presented with a lock and key, and used the key to open the lock that would otherwise not open. [Tr. at 26:1–27:3].

Defense did not object to the demonstration. Mr. Trujillo, through counsel, cross-examined Deputy Skroch about his pursuit, arrest, and search of Mr. Trujillo. [*See generally* Tr. at 29–33] He also questioned Deputy Skroch about the department's inventory search policy. [*See generally* Tr. at 33–38] Defense did not alert the Court that the lock presented was not the lock that he believed Deputy Skroch damaged in order to open Mr. Trujillo's green backpack. Defense did question the deputy as to how the key presented at the hearing had been inventoried, but asked no follow up questions of Deputy Skroch when he stated he did not personally find the key. [Tr. at 40:19–21]

The Court then inquired why Deputy Skroch believed the lock had been damaged when, at the hearing, the lock appeared to function as designed. [Tr. at 39:19–40:15] He explained that he pulled on the lock and believed "it broke," so that is what he noted in his report. [Tr. at 39:23–40:1, 40:7–8]

Drug Enforcement Agent Jeffrey Mauldin testified that the lock and key came into his possession on the morning of the incident and remained in his possession up until the hearing. [Tr. at 42:18-43:20]. Defense counsel did not object to Agent Mauldin's testimony, nor cross-examine him. [Tr. at 44:5, 46:21] The Court questioned Agent Mauldin about where he found the lock and key, and whether he had knowledge that the lock was believed to be damaged. [Tr. at 44:6–46:17] Agent Mauldin found the key on the table on the morning of the incident. He did not check the lock before submitting the affidavit [Tr. at 46:4–6], and stated that it had not been checked until the Friday before the hearing when both counsel and Agent Mauldin viewed it in Agent Mauldin's office. [Tr. 46:10–13]

Captain Andrea Taylor testified on direct examination regarding the Bernalillo County Sheriff's Department's inventory search procedures and training, as well as the policies behind them. [*See generally* Tr. at 47–52, 57] Mr. Trujillo, through counsel, cross-examined Captain Taylor on the same, paying particular attention to whether the Department had a written policy on opening or breaking locks before bringing containers or locks to evidence. [*See generally* Tr. at 54–56; *see* 55:17–56:5] The Court then questioned Captain Taylor about whether Mr. Trujillo's arrest was mandatory or discretionary. [Tr. at 58:7–8, 22–23] Captain Taylor responded that the arrest was discretionary, and that the factors that go into the determination of whether to arrest are also discretionary. [Tr. 58:24, 59:15–24]

On October 29, 2018, the Court issued a Memorandum Opinion and Order denying the exclusion of statements and evidence found after an inventory search of Mr. Trujillo's vehicle on December 6, 2017. [Doc. 31] In addition to finding that the lock in question was not damaged, the Court concluded that Deputy Skroch was following clear policies by the Bernalillo County Sheriff's Department that requires officers to conduct a complete inventory of all property before

a vehicle is towed or items are entered into evidence. [Doc. 31 at 11] The Court found Deputy Skroch's testimony credible, and found no reason to believe that he was "rummaging in order to discover incriminating evidence." [Doc. 31 at 14 (citing *Florida v. Wells*, 495 U.S. 1 (1990))]

On October 31, 2018, Mr. Trujillo filed the instant Motion to Reconsider his Motion to Suppress Evidence and Supporting Memorandum. [Doc. 32] The government filed a Response on November 7, 2018. [Doc. 35] Defense did not file a Reply.

## **DISCUSSION**

It is well-established in this Circuit that, although the Federal Rules of Criminal Procedure do not expressly authorize a motion for reconsideration, such motions are proper in criminal cases. *See United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014); *see also United States v. Christy*, 810 F. Supp. 2d 1219, 1249 (D.N.M. 2011) (Browning, J.) (stating that in the criminal context, "courts ordinarily apply the same standards as those used in civil cases" for motions to reconsider), *aff'd*, 739 F.3d 534 (10th Cir. 2014). A district court thus may amend its interlocutory orders prior to entry of final judgment. *See, e.g.*, *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) ("The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.' Instead, the rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment . . . or a motion seeking relief from the judgment."); *Trujillo v. Bd. of Educ. of Albuquerque Pub. Sch.*, 212 F. App'x 760, 765 (10th Cir. 2007) ("A district court has discretion to revise interlocutory orders prior to entry of final judgment."). Hence, "[w]hen a party seeks to obtain reconsideration of a non-final order, the motion is considered 'an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.'" *Wagner Equip. Co. v. Wood*, 289 F.R.D. 347, 349 (D.N.M. 2013) (quoting *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991)). The

4

Court's authority, then, is sustained by the pragmatic reality that a "district court should have the opportunity to correct alleged errors in its dispositions." *Christy*, 739 F.3d at 539. Consequently, the district court enjoys "considerable discretion in ruling on a motion to reconsider." *Federated Towing & Recovery, LLC v. Praetorian Ins. Co.*, 283 F.R.D. 644, 651 (D.N.M. 2012) (citing *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997)).

The scope of reconsideration, however, is narrowly cabined and far more limited than in an ordinary appeal. That is, a motion to reconsider is an "inappropriate vehicle [ ] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Rather, "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.*

Mr. Trujillo argues that the Court has authority to "reconsider new evidence that was not previously made available." [Doc. 32] He believes that the lock admitted into evidence at the May hearing was not the lock "broken" by Deputy Skroch, and attempts to provide support for his assertion by using photographic exhibits. [Doc. 32 at 1, 4, 5] He further states that he was "unable to see the broken lock until he zoomed in closely with his computer on the original high resolution color photo provided by the United States." [Doc. 32 at 2] Mr. Trujillo states that the "lock was previously unknown to the parties" and "[t]he existence of the second broken lock is not listed in the inventory, it was not displayed at the evidence viewing, and was not testified about by Deputy Skroch at the hearing in this matter." [Doc. 32 at 7]

Defense does not explain where the lock presented at the hearing, if different from the alleged broken lock, came from or why it was presented to the Court as the lock associated with

the backpack.  Further, Defense does not provide support for his argument that more than one lock must have existed, besides his belief that the photographs attached as exhibits suggest that the lock was, in fact, broken.  The Court has reviewed these exhibits and does not agree with counsel that they "clearly show[] the shackle of the lock to be broken or cut in half."  [Doc. 32 at 4]

Further, as the government points out, Mr. Trujillo had access to these photographs on or about December 22, 2017, well before the May 8, 2018 hearing.  [Doc. 35 at 2]  In addition, on May 4th—the Friday before the hearing—Mr. Trujillo had the opportunity to view the only luggage lock in non-drug evidence.  [Doc. 35 at 2; *see also* Tr. 46:10–13]  The government called three witnesses at the hearing, and Defense confronted and cross-examined two of the three witnesses.  At no point did Defense object to the admission of the lock or use the pictures he had in his possession to call in to question the authenticity of the lock—or the possible existence of other locks.  Additional locks need not be listed in the inventory list to be known to Mr. Trujillo.  As the owner of the backpack, Mr. Trujillo was in the best position to know whether other locks existed.  Thus, Mr. Trujillo would be the only individual able to alert the Court that there were more locks in existence, but he did not do so.  Defense had the opportunity to present the photographs, now attached to his Motion to Reconsider, but did not use them in his cross-examination of the witnesses.

As Defense makes no showing of a change in law, new evidence, or clear error, Defense has not met his burden on a motion for reconsideration.  The Court has also considered the exhibits attached to Defense's motion and further finds that an evidentiary hearing is not necessary.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Reconsider Order [Doc. 32] is **DENIED.**

Dated this 21st day of December, 2018.

                                                    _____
                                                    **MARTHA VÁZQUEZ**
                                                    UNITED STATES DISTRICT JUDGE