**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                              No. 17-CR-3563 MV

GABRIEL TRUJILLO

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Gabriel Trujillo's objection to the Presentence Investigation Report. Doc. 98. The government filed a Sentencing Memorandum responding to the objection. Doc. 99. This Court held an evidentiary hearing on this matter on November 13, 2024. Doc. 110. At the hearing, the Court overruled Mr. Trujillo's objection. This Memorandum Opinion further explains the Court's ruling.

**BACKGROUND**

On December 6, 2017, Bernalillo County Sherriff's Office deputies observed a vehicle traveling at a high rate of speed and attempted to conduct a traffic stop. Presentence Investigation Report ("PSR") ¶ 6. The driver, later identified as the defendant, Gabriel Trujillo, refused to stop and continued traveling at a normal speed, failing to use turn signals and crossing traffic lanes. *Id.* Deputies observed Trujillo stick his hand out the window and sprinkle a substance out the window onto the road. *Id.* Eventually, Mr. Trujillo came to a stop and officers placed him under arrest. While placing him in restraints, deputies noticed Mr. Trujillo was wearing protective body armor. *Id.* Deputies inspected the car for additional occupants and observed a Glock firearm tucked between the driver's seat and the center console, a Sig Sauer firearm on the passenger seat, and a rifle case in the backseat.

1

During questioning, Trujillo indicated he was wearing the vest and had the firearms for his protection, as he had received threats from his girlfriend and her friends. PSR ¶ 7. In addition, he indicated all the items inside the car belonged to him and admitted to deputies he had previously been convicted of a felony offense. *Id.* Deputies confirmed he had previously been convicted of for Receiving or Transferring a Stolen Motor Vehicle, Altering or Changing Engine or Other Numbers, and Possession of Burglary Tools in the Second Judicial District Court, Docket No.: D-202-CR-2009-04464. *Id.*

Prior to towing the defendant's vehicle, deputies seized the following items:

(a) Glock 33 semi-automatic handgun (Serial No. LPL830) with a loaded 22- round magazine and an additional 15 round magazine inside a holster;
(b) SIG Sauer P250 semi-automatic handgun (Serial No. EAK202813) with two loaded six round magazines and a holster;
(c) A rifle case with a SIG Sauer SIG 556 rifle (Serial No. 44B000715) with a long-range scope, a bipod, and loaded P-Mag 60 round drum magazine, a loaded 30 round magazine, a loaded 45 round magazine, and a loaded 30 round SIG Sauer magazine;
(d) A second rifle case with a Wasr 10 AKM Rifle (Serial No. A45868) with a loaded 30 round magazine and loose ammunition;
(e) Bottle containing 39 pills of Alprazolam (Xanax) pills.

PSR ¶ 8. In addition to the above items seized, deputies found a backpack inside the vehicle which had a lock secured on it. PSR ¶ 9. Deputies broke the lock for inventory purposes. Inside the backpack, deputies found the following items:

(a) Gun Case with a Llama .45 handgun (Serial No. A45868) with a seven round magazine and loose ammunition;
(b) Black plastic bag with bubble wrapped container which contained a large amount of crystal-like substance which was field tested with a positive result for methamphetamine. Lab reports indicated the methamphetamine to be 207.27 grams of methamphetamine (actual);
(c) A shotgun shell box with $100 bills and $20 bills. The total amount of U.S. currency found was $7,378.64;
(d) Shotgun shells;
(e) Various calibers of loose ammunition, and;

(f) Two digital scales.

PSR ¶ 9. While waiting for the tow truck, Trujillo requested a lawyer and questioning ceased. *Id.*

On August 12, 2021, Mr. Trujillo pled guilty to Counts 1 and 2 of a two-count Indictment. Doc. 88. Count 1 charged him with Possession with Intent to Distribute 50 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). Count 2 charged him with Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, and Possessing a Firearm in Furtherance of Such Crime, in violation of 18 U.S.C. §924(c)(1)(A)(i). The United States Probation Office completed a Presentence Investigation Report on November 18, 2021. Doc. 89. Because Mr. Trujillo was wearing protective body armor at the time of his arrest, the PSR assessed a four-level enhancement under U.S.S.G. § 3B1.5(2)(B). Mr. Trujillo objects to this enhancement, arguing that § 3B1.5(2)(B) does not apply because he was wearing a "stab vest" rather than a bulletproof vest. This Court held an evidentiary hearing on November 13, 2024, where it heard testimony from Special Agent Jeffrey Mauldin of the Drug Enforcement Administration and from Hoyt Schmidt, an executive vice president with Point Blank Body Armor.

At the hearing SA Mauldin testified that when he examined the vest Mr. Trujillo was wearing on the night of his arrest, he was unable to find a serial number but he was able to read a label on the vest that said "Galls." November 13, 2024, Hearing Transcript ("H'rg Tr.") at 7:13-24.[1] He spoke with a representative at the Galls company who informed him that they receive the vests from Point Blank Body Armor. *Id.* at 8:2-5. Hoyt Schmidt, an executive vice president at Point Blank, then testified that he has been working with Point Blank for approximately 19 years.

---

[1] The Court's citations to the transcript refer to the court reporter's original, unedited version; any final transcripts may contain slightly different page and/or line numbers.

*Id.* at 9:21. He explained that Galls is a company that distributes Point Blank body armor under their name. *Id.* at 13:18-20. He also explained that Point Blank does not sell "spike," or anti-blade, armor to Galls. *Id.* at 13:21-22.

Mr. Schmidt analyzed the vest while on the witness stand. While handling the vest, he testified that "from the thickness and the stiffness" of the vest he could tell that it was "a ballistic package," i.e. a bulletproof vest. *Id.* at 12:25-13:1. He also cut open the vest and inspected the material inside the vest panels. Upon opening the vest, he noted that the material inside had writing on it which indicated that it was a C3A-2 model of the ballistics package. *Id.* at 15:7-9. Mr. Schmidt explained that he knew the material inside was for a ballistic armor package because it contained two different materials, including laminated Kevlar. *Id.* at 13-16. He explained that the Point Blank anti-blade vests only use one material. *Id.* After concluding his examination of the vest, Mr. Schmidt was asked how confident he was that the vest was designed to protect the wearer from bullets and he responded, "100 percent." *Id.* at 16:15-18.

**DISCUSSION**

Under U.S.S.G. §3B1.5(2)(B), "if the defendant was convicted of a drug trafficking crime and . . . the defendant used body armor during the commission of the offense, in preparation for the offense, or in an attempt to avoid apprehension for the offense" the base offense level is increased by four levels. Application Note 1 states that body armor refers to "any product sold or offered for sale, in interstate or foreign commerce, as personal protective body covering intended to protect against gunfire, regardless of whether the product is to be worn alone or is sold as a complement to another product or garment." App. Note 1 § 3B1.5.

At the evidentiary hearing, defense counsel conceded that Mr. Schmidt's uncontested testimony showed that the vest Mr. Trujillo was wearing when he was arrested was designed to

protect against gunfire. H'rg Tr. at 26:15-22. However, defense counsel argued that at the time of his arrest, Mr. Trujillo was living out of his car and thus kept narcotics in the car. *Id.* at 27:11-13. Accordingly, defense counsel argued that Mr. Trujillo did not necessarily have the intent to distribute the narcotics when he was wearing the vest and therefore did not wear the vest "during the commission of the offense" as required by U.S.S.G. § 3B1.5(2)(B). *Id.* at 27:15-16. This argument is unavailing.

The facts in this case closely mirror those in *United States v. Chambers,* 268 F.App'x 707 (10th Cir. 2008). In *Chambers,* police officers conducted a traffic stop on the vehicle the defendant was driving. When officers frisked the defendant, they found that he was wearing body armor and had a revolver in his back pocket. *Id.* at 709. Officers then searched the car and discovered "a small baggie of cocaine, a loaded handgun, a box of 9mm bullets, a briefcase containing several baggies of crack cocaine, dozens of empty plastic baggies, a set of digital scales, and over $700 in cash." *Id.* The defendant in *Chambers* was convicted at trial of possession of at least five grams of crack cocaine with intent to distribute, among other offenses. *Id.* at 710. At sentencing, the defendant argued that the enhancement under § 3B1.5(2)(B) did not apply because although he was wearing body armor at the time of his arrest, he was not wearing the armor in relation or connection with the drug offense, namely the possession of crack cocaine with the intent to distribute. *Id.* at 712. The district court found that because he was wearing the armor at the time he possessed the cocaine, the defendant wore the armor "in the commission of the offense" and the enhancement applied. *Id.* The Tenth Circuit upheld the district court's application of the enhancement. *Id.*

As in *Chambers,* where the defendant was arrested outside of a woman's home who complained that the defendant was threatening her, there is no indication in the instant case that Mr. Trujillo actively intended to distribute the methamphetamine at the time he was arrested. But

this fact is inapposite, because in order to be convicted of possession with intent to distribute, a defendant need not be actively distributing the drugs at the time of his arrest. Indeed, the "intent to distribute" may be inferred "from the possession of large quantities of drugs." *United States v. Pulido-Jacobo,* 377 F.3d 1124, 1131 (10th Cir. 2004). Thus, even though Mr. Trujillo may have been living out of his car and may not have actively intended to distribute the methamphetamine when he was arrested wearing body armor, he still possessed a large quantity of methamphetamine and thus under *Chambers,* wore the body armor "during the commission of the offense" as required by U.S.S.G. § 3B1.5(2)(B). Accordingly, the objection is overruled.

## CONCLUSION

At the evidentiary hearing, the government established by a preponderance of the evidence that the vest Mr. Trujillo was wearing when he was arrested was designed to protect against gunfire. Furthermore, because Mr. Trujillo wore the vest at the time he possessed the drugs, he wore the vest in the commission of the offense and the enhancement under §3B1.5(2)(B) applies.

**IT IS THEREFORE ORDERED THAT** Mr. Trujillo's objection to the enhancement under U.S.S.G. § 3B1.5(2)(B) is overruled.

ENTERED this 17th day of January 2025.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE